UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

Civil Action 10-116-HRW

THOMAS ROBERTS, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

STRYKER CORPORATION
and
STRYKER SALES CORPORATION, DEFENDANTS.

This matter is before the Court upon the Defendants' Motion to Dismiss [Docket No. 8]. The motion has been fully briefed by the parties [Docket Nos. 13 and 14] and stands ripe for decision. For the reasons set forth below, the Court finds that Plaintiff has stated claims against Defendants upon which relief can be granted. Therefore, dismissal is not warranted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, on or about May 6, 2008, Plaintiff Thomas Roberts underwent arthroscopic shoulder surgery at Our Lady of Bellefonte Hospital in Ashland, Kentucky. During the procedure, the orthopedic surgeon implanted a pain pump manufactured, sold, and/or distributed by Defendants. The pain pump injected the local anesthetic products into Plaintiff's shoulder joint on a continuous basis for up to 72 hours or more following the surgery. He claims that,

as a result of the use of the pain pump, he has developed a condition known as glenohumeral chondrolysis. This results in constant pain and loss of full use of the shoulder and/or arm.

On November 11, 2001, Plaintiff instigated this civil action against Defendants, asserting claims for negligence (Count I), strict liability (Count II), breach of express warranty (Count III), breach of implied warranty (Count IV), fraudulent misrepresentation (Count V), fraudulent concealment (Count VI), negligent misrepresentation (Count VII), fraud and deceit (Count VIII), and violations of state "Consumer Fraud and Deceptive Trade Practices Act" (Count IX).[1]

Defendants seek a dismissal of all claims against them pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

## II.     12(b)(6) STANDARD

The purpose of a motion to dismiss is to allow a Defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). For purposes of dismissal pursuant to Fed. R. Civ. P 12(b)(6), the complaint must be construed in the light most favorable to the

---

[1] In his Response to Defendants' Motion, Plaintiff stated that he wished to voluntarily dismiss Counts III, IV and IX of his Complaint.

2

nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The standard for dismissal is liberal. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also, Monette v. Electronic Data Systems, Corp.*, 90 F/3d 1173, 1189 (6th Cir. 1996). Consequently, a complaint will not be dismissed unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

Aa motion to dismiss is based solely upon the complaint; therefore, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

## III. ANALYSIS

Defendants' argument is two-fold. First, they contend that Plaintiff's claims for negligence and strict liability are barred by the statute of limitations. They also argue that Plaintiff's various claims for fraud have not been plead with particularity and, thus, do not satisfy the requirements of Federal Rule of Civil Procedure 9(b).

## A. Plaintiff's Claims Are Not Barred by the Statute of Limitations.

Kentucky Revised Statute 413.140(1)(a) mandates that "an action for an injury to the person of a plaintiff" "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1)(a).

Here, Plaintiff alleges that his injury occurred when the Stryker pain pump was inserted into his shoulder joint after arthroscopic surgery on or about May 6, 2008. This lawsuit was not filed, however, until November 11, 2010, over two years after the alleged injury occurred. Thus, Defendants contend that Plaintiff's claims are barred by the one-year statute of limitations. The Court disagrees.

In this case, the statute limitations was tolled by virtue of the discovery rule. Under the "discovery rule," a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct. *Hazel v. General Motors Corporation*, 863 F.Supp. 435, 438 (W.D. Ky. 1994).

In this case, Plaintiff alleges that he did not first learn of the subject injury until November 13, 2009, when the Federal Drug Administration issued a Postmarket Drug Safety Bulletin discussing reports of chondrolysis in 35 patients

who received continuous intra-articular infusion of local aesthetics [Complaint, Docket No. 1 at ¶ 11.19]. Therefore, the cause of action did not begin to accrue until then.

Defendants contend that the discovery rule does not apply in this case. In support of their argument, Defendants rely upon *Fluke Corporation v. LeMaster*, 306 S.W.3d 55 (Ky. 2010). In *Fluke*, the Plaintiffs used a Fluke brand voltage meter to determine whether electricity was present in the area where they were working. Due to a voltage meter malfunction, the Plaintiffs incorrectly believed no electricity was present and were injured in a subsequent explosion. *Id.* at 57. In reinstating summary judgment in favor of the manufacturer, the Kentucky Supreme Court reasoned that, because the explosion occurred after the voltage meter indicated no current, the Plaintiffs "should have reasonably suspected that the voltage meter was not working properly and investigated this possibility." *Id.* at 61. In other words, the discovery rule did not apply.

*Fluke* is distinguishable to this case. In *Fluke*, Plaintiffs suffered injuries as a result of a sudden electrical explosion when an electrical multimeter showed no voltage going through a piece of equipment. *Id.* at 57. The court noted the injuries sustained were "immediately apparent." *Id.* Thus, due to the nature of what occurred in *Fluke*, the Plaintiffs should have immediately known that the

multimeter was defective. The court in *Fluke* also noted that the plaintiff should have investigated the defendant's multimeter itself for potential malfunction because the government agency that investigated the explosion examined the multimeter. *Id.* at 60.

In the present case, Plaintiff had prior shoulder problems and continued having shoulder problems after the surgery at issue. Plaintiff in this case, unlike the plaintiff in *Fluke*, had absolutely no reason to associate those problems with the use of a pain pump or to suspect that the pain pump was somehow defective. Further, the court in *Fluke* made it clear that the discovery rule is directly applicable to medical injuries, stating "the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Id.* at 60.

Defendants also argue that Plaintiff should have discovered his injury based upon the "wealth of scientific information available" in this regard [Defendants' Motion to Dismiss, Docket No. 8]. Defendants appear to attribute medical expertise to Plaintiff. This argument has been rejected by the The Kentucky Supreme Court, which specifically stated that "[o]ne who possesses no medical knowledge should not be held responsible for discovering an injury based on the

wrongful act of a physician." *Wiseman v. Alliant Hospitals, Inc.* 37 S.W.3d 709, 712-713 (Ky. 2000). This reasoning is applicable here. To require Plaintiff to possess knowledge of and intuit a causal connection between pain pumps and glenohumeral chondrolysis is at best, unreasonable.

It is well settled that a legally recognizable injury does not exist until the plaintiff discovers the defendant's wrongful conduct. *Id.* In this case, Plaintiff did not discover Defendants' alleged wrongdoing until November 13, 2009. That is the date the clock began running. As the Complaint was filed within a year, on November 11, 2010, Plaintiff did not run afoul the stature of limitations.

### B.  Plaintiff Has Plead Fraud with Sufficient Particularity.

Rule 9(b) of the Federal Rules of Civil Procedure provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pled with particularity. However, "[i]n ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Rule 8 requires a short and plain statement of the claim and calls for simple, concise, and direct allegations. "Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two

7

rules must be read in harmony." *Id.*

Therefore, the Court should not focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud, as this is a narrow approach and fails to consider the general simplicity and flexibility contemplated by the Rule. *Id.* "Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." *Id.* "In such a circumstance, the rule of pleading details is relaxed." *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018, *11 (E.D. Ky. Mar. 31, 2007). "This seems appropriate, since the extent to which Defendants may have been aware of the errors being made, or potential of errors being made, and any acts taken or not taken based upon such information are matters within Defendant's knowledge." *Id.* "Requiring Plaintiffs to plead specific facts evidencing Defendants' knowledge of the falsity and/or recklessness of their actions, rather than permitting such to be alleged generally, puts the cart before the horse, even with a claim of fraud." *Id.*

In examining the Complaint for sufficiency in this regard, the Court must determine if Plaintiff has pled the "who, what, when, where and how" of the alleged fraud. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873. 877 (6th Cir. 2006).

Plaintiff meets the "who" requirement by specifically stating that Defendants made false and fraudulent statements to the Plaintiff, his doctors, the public, and the FDA.

> Defendants [Stryker] falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff and/or the FDA, and/or the public in general, that said products, the pain pumps, had been tested and were found to be safe and/or effective for the control of pain after shoulder surgery.

[Complaint, Docket No. 1 ¶ 80].

Plaintiff meets the "what" requirement by specifically stating that the false information included statements that their pain pumps were safe for their intended use in the shoulder joints, despite studies and tests to the contrary.

> Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff and/or the FDA, and/or the public in general, that said products, the pain pumps, had been tested and were found to be safe and/or effective for the control of pain after shoulder surgery.

[Complaint, Docket No. 1 ¶ 80].

> Upon information and belief, Defendants encouraged physicians, hospitals, and/or healthcare providers to place pain pump catheters directly into the glenohumeral joint space.

[Complaint, Docket No. 1 ¶ 88].

> Upon information and belief, Defendants represented to physicians, hospitals and healthcare providers that the delivery of local anesthetic directly to the joint space by use of pain pump catheters in the glenohumeral joint space was safe.

[Complaint, Docket No. 1 ¶ 89].

> Upon information and belief, Defendants requested that the FDA approve an indication allowing the delivery of local anesthetic directly to the joint space by use of pain pump catheters in the glenohumeral joint space, but were denied such indication.

[Complaint, Docket No. 1 ¶ 90].

Plaintiff meets the "when" requirement by specifically stating that Defendants made the false and fraudulent statements over the course of numerous years that they marketed and sold their pain pumps.

> Despite the fact that Defendants knew or should have known that intra-articular pain pumps caused unreasonably dangerous side effects, Defendants continued to market, manufacture, distribute and/or sell pain pumps to consumers, including the Plaintiff.

[Complaint, Docket No. 1 ¶ 28].

> At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed intra-articular pain pumps as herein above described that were used in Plaintiff.

[Complaint, Docket No. 1 ¶ 35].

> Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff and/or the FDA, and/or the public in general, that
>
> said products, the pain pumps, had been tested and were found to be safe and/or effective for the control of pain after shoulder surgery.

[Complaint, Docket No. 1 ¶ 80].

Plaintiff meets the "where" requirement by specifically stating that Defendants made the false and fraudulent statements to the medical and healthcare community, and to the Plaintiff and/or the FDA.

> Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff and/or the FDA, and/or the public in general, that
>
> said products, the pain pumps, had been tested and were found to be safe and/or effective for the control of pain after shoulder surgery.

[Complaint, Docket No. 1 ¶ 80].

> Upon information and belief, Defendants represented to physicians, hospitals and healthcare providers that the delivery of local anesthetic directly to the joint space by use of pain pump catheters in the glenohumeral joint space was safe.

[Complaint, Docket No. 1 ¶ 89].

> Upon information and belief, Defendants requested that the FDA approve an indication allowing the delivery of local anesthetic directly to the joint space by use of pain pump catheters in the glenohumeral joint space, but were denied such indication.

[Complaint, Docket No. 1 ¶ 90].

These are not vague or boilerplate allegations but, rather, specific statements. Rule 9(b)'s purpose "is to provide fair notice to the Defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999). The Court finds that the allegations in the Complaint provide such notice to Defendants and, as such, satisfy the requirements of Rule 9(b) and withstand the spectre of Rule 12(b)(6).

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 8] be **OVERRULED**.

This 18th day of July, 2011.



Henry R. Wilhoit, Jr., Senior Judge